In the District Court of the United States
For The District of South Carolina

BEAUFORT DIVISION

| | |
|---|---|
| **Ronnie Muldrow, #235016,** ) | Civil Action No. 9:06-2218-TLW-GCK |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF THE MAGISTRATE JUDGE** |
| **NFN Connerly, Nurse at Manning** ) | |
| **Correctional Institution and** ) | |
| **NFN Peppers, Nurse at Manning** ) | |
| **Correctional Institution,** ) | |
| ) | |
| Defendants. ) | |
| ) | |

## I. INTRODUCTION

The Plaintiff, Ronnie Muldrow ("Plaintiff" or "Muldrow"), a state prisoner incarcerated in the South Carolina Department of Correction's Manning Correctional Institution ("MCI"), has filed this 42 U.S.C. § 1983 action against the defendants Nurse Connerly and Nurse Peppers (collectively, the "Defendants").[1] The Plaintiff alleges that he did not receive appropriate medical care from the Defendants after he was bitten on his leg by a spider.

Pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), D.S.C., the undersigned United States Magistrate Judge is authorized to review pretrial matters in prisoner cases filed under 42 U.S.C. § 1983, and submit findings and recommendations to the District Court.

## II. *PRO SE* COMPLAINT

The Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S.

---

[1] The Plaintiff has named "Nurse Connerly" as a Defendant. According to the medical records, Plaintiff was treated by Nurse Kennerly.

97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978).  Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1218, codified at 28 U.S.C. § 2254.  This review has been conducted in light of the following precedents:  *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980).  Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal.  The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented.  *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999).  Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court.  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986).

### III.  FACTUAL BACKGROUND

The evidence, either uncontested or taken in the light most favorable to the Plaintiff as the non-moving party, and all reasonable inferences therefrom, to the extent supported by the record, are set forth below.

The Plaintiff alleges that on the night of February 10, 2005, he was bitten by a spider and observed the spider crawling out of his pants leg. On the morning of February 11, 2005, Plaintiff began to experience acute pain and stiffness in his left leg and noticed a "large pussy swollen area" on his leg.[2] That morning, he signed up for sick call, and reported to sick call later that morning. Plaintiff explained to Defendant Connerly, who was the nurse on duty, that he had been bitten by a spider and he was experiencing very acute pain and stiffness in his left leg. He then "displayed the swollen pussy leg" to Defendant Connerly.[3]

According to Plaintiff, Defendant Connerly looked at the swollen area on his leg and lightly touched the skin surrounding the swollen and pussy area. Defendant Connerly told Plaintiff that the swelling and pain would eventually go away and that there was nothing she could do to help him.[4]

Plaintiff alleges that during the night of February 11, he continued to experience acute pain in his leg. The next morning, Plaintiff noticed the swelling had increased and Plaintiff experienced pain when he walked. Later that morning, Plaintiff told the shift supervisor of his physical condition. The shift supervisor telephoned the nurses' station to apprise the on-duty nurse of Plaintiff's condition. The on-duty nurse, Defendant Pepper, instructed the supervisor to send Plaintiff to the nurses station. Plaintiff proceeded to the nurses station and explained his problem to Defendant Peppers, who used "some sort of instrument" to measure the inflamed area of Plaintiff's leg. Defendant Peppers told Plaintiff that until a doctor gave him (Peppers) instructions, there's "practically nothing" that he could do. Plaintiff returned to his living area.[5]

---

[2]    See Complaint [1] at ¶¶ 6-9.

[3]    Complaint [1] at ¶¶ 10–13.

[4]    Complaint [1] at ¶¶ 14--15.

[5]    Complaint [1] at ¶¶ 16– 24.

Later that evening, Plaintiff informed the shift supervisor that his physical condition had not improved. Plaintiff was told to return to the nurses' station, and upon his return, he encountered Defendant Peppers, and told him that his leg was causing him severe pain which made it very difficult to walk. Plaintiff contends that Defendant Peppers told Plaintiff that his condition was "an ordinary reaction" to a spider bite and there was nothing that could be done at that time until a doctor called in.[6]

On February 13, 2005, Plaintiff was called to the nurses' station and given "a couple" of 600 mg Ibuprofen tablets. Plaintiff maintains that the inflamed area of his leg, which had begun to lose pus, was not examined by any medical personnel that day.[7] The next day (February 14, 2005), Dr. Sampson examined the spider bite on Plaintiff's leg. Upon questioning, Plaintiff stated that after the bite occurred, the pain and swelling increased. His leg became stiff, which made it very difficult for him to walk, and at one point he vomited and could not hold food on his stomach. Dr. Sampson prescribed a regimen of different kinds of antibiotics, 800 mg. Ibuprofen, and "viking pills".[8]

Plaintiff contends that the actions of Defendants Connerly and Peppers, who did not take "any steps to treat and to prevent Plaintiff's physical condition from deteriorating from the spider bite" constitutes deliberate indifference to Plaintiff's serious medical needs and violates the Eighth Amendment's prohibition against cruel and unusual punishment.[9] Plaintiff requests that the court (1) issue a declaratory judgement stating that the Defendants Connerly and Peppers failure to provide proper medical treatment to Plaintiff violated Plaintiff's Eighth Amendment rights; (2) issue an injunction ordering the Defendants'

---

[6] Complaint [1] at ¶¶ 25–29.

[7] Complaint at ¶¶ 30– 31.

[8] Complaint at ¶¶ 31– 35.

[9] Complaint at ¶ 36.

superiors to take "corrective actions" against the Defendants if the court finds they violated Plaintiff's rights; (3) award compensatory damages in the amount of $500,000.00 jointly and severally against the Defendants for failure to provide adequate medical treatment, which resulted in the Plaintiff being subjected to "days of excruciating physical pain and suffering;" (4) award punitive damages in the amount of One Million Dollars against each of the Defendants; and (5) for such other relief as the court deems proper.[10]

## V.  PROCEDURAL HISTORY IN FEDERAL COURT

The Plaintiff commenced this action on August 3, 2006 against the Defendants Connerly and Peppers.[11]  On September 19, 2006, the Defendants answered, asserting numerous defenses, including Plaintiff's failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995.  [6]  On October 26, 2006, the Defendants filed a Motion for Summary Judgment, attaching a Memorandum, an Affidavit of Donald R. Sampson, M.D., and Plaintiff's medical records for the time period from January 25, 2005 through March 17, 2005.  [7-1; 7-2; 7-3]

On October 30, 2006 the undersigned issued an Order, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of the dismissal procedure and the possible consequences if he failed to adequately respond to the Defendants' Motion for Summary Judgment.  [8]  On November 20, 2006, Plaintiff filed a response in opposition to the Defendants' Motion for Summary Judgment and a demand for jury trial.  [9; 10]  Accordingly, this matter is ripe for review.

---

[10]  Complaint at A-E (un-numbered pages 9-10).

[11]  Plaintiff has the benefit of the holding of *Houston v. Lack*, 487 U.S. 266 (1988) with respect to the delivery date of his Complaint.  [4-1]

## VI.  THE STANDARD FOR DETERMINING A
## MOTION FOR SUMMARY JUDGMENT

The Defendants' Motion for summary judgment is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion.  *Felty v. Graves-Humphreys Co.*, 818 F. 2d 1126 (4th Cir. 1987).  Similarly, genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions.  *Stone v. University of Md. Medical Sys. Corp.*, 855 F. 2d 167 (4th Cir. 1988).

In deciding whether to grant a motion for summary judgment, all justifiable inferences must be drawn in favor of the non-moving party.  *Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir. 1990); *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  In addition, "once a plaintiff 'has named a witness to support [his] claim, summary judgment should not be granted without . . . somehow showing that the named witness' possible testimony raises no genuine issue of material fact.'"  *Miltier*, 896 F.2d at 852, *quoting Celotex v. Catrett*, 477 U.S. 317, 328 ( 1986) (White J., concurring).

For purposes of evaluating the appropriateness of summary judgment, this court must construe the facts are set forth in the light most favorable to Plaintiff.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.") (internal quotation marks omitted); Fed.R.Civ.P. 56(c) (Summary judgment is proper if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

When, as in the present case, the Defendants are the moving party, and the Plaintiff has the ultimate burden of proof on an issue, the Defendants must identify the parts of the record that demonstrate the Plaintiff lacks sufficient evidence.  The nonmoving party, then, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## VII.  DISCUSSION

### A.  Exhaustion of Administrative Remedies

As a threshold matter, the court must address whether Plaintiff has exhausted his administrative remedies prior to filing suit.  The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires an inmate to exhaust "such administrative remedies as are available" before suing over prison conditions.  *See also Porter v. Nussle*, 534 U.S. 516 (2002).  Specifically, 42 U.S.C. § 1997e(a) states, "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion must occur prior to the filing of the lawsuit or it must be dismissed.  *Anderson v. XYZ Correctional Health Services*, 407 F.3d 674, 683 (4th Cir. 2005).

In the present case, the Plaintiff properly exhausted his administrative remedies prior to filing suit.  The Plaintiff filed a grievance alleging he failed to receive proper medical treatment.[12]  He pursued the South Carolina Department of Corrections' grievance process

---

[12]     *See* Step 1 Inmate Grievance Form attached to Complaint.

through Step 2[13] and appealed the denial of his grievance to the South Carolina Administrative Law Court, which dismissed the grievance by an Order filed February 6, 2006.[14]

### B. Plaintiff's Section 1983 Claims Against the Defendants in Their Official Capacities

Section 1983, the primary basis for jurisdiction of the Plaintiff's lawsuit, provides in part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof, to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Accordingly, as required by statute, Plaintiff must meet two requirements to bring suit under Section 1983. First, he must show that the defendants deprived Plaintiff of his rights "under color of" state law, and second, that the deprivation is of a right guaranteed by the Constitution or laws of the United States. Deliberate indifference by prison personnel to an inmate's serious illness or injury is actionable under 42 U.S.C. § 1983 as constituting cruel and unusual punishment contravening the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976).

Plaintiff has filed suit against Nurse Connerly and Nurse Peppers in their official and individual capacities. During the times alleged in the Complaint, the Defendants were employees of the SCDC. The Defendants contend, and this court agrees, that Plaitniff's suit against Nurse Connerly and Nurse Peppers, in their official capacities as nurses employed by

---

[13] *See* Step 2 Inmate Grievance Form attached to Complaint.

[14] *See* Notice of Appeal to Administrative Law Court, dated June 23, 2005, attached to Plaintiff's Response [11]. The undersigned will take judicial notice of the Order of Dismissal by the Administrative Law Court entered in *Ronnie Muldrow, #235016 vs. South Carolina Department of Corrections,* Docket No: 05-ALJ-04-00463-AP.

the SCDC, is barred by the Eleventh Amendment, which acts to bar suits against a state by citizens of another state or a foreign country and bars suits against a state by citizens of that state. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89 (1984), *cert. denied*, 498 U.S. 850 (1990). This immunity from suit conferred on states by the Eleventh Amendment extends to suits against state agencies, such as the SCDC, and its employees. A suit against state officials in their official capacities is construed as being against the State itself and is barred by the Eleventh Amendment absent consent to suit or waiver of immunity. Pennhurst, *Id.* at 98-100; *see also Jensen v. Conrad*, 570 F. Supp. 91, 97 (D.S.C. 1983), *aff'd*. 747 F.2d 185 (4th Cir. 1984), *cert. denied*, 470 U.S. 1050 (1985); *Coffin v. S. C. Department of Social Services*, 562 F. Supp. 579, 584 (D.S.C. 1983).

Although Congress may expressly abrogate a State's Eleventh Amendment immunity pursuant to its enforcement power under the Fourteenth Amendment, the Supreme Court has consistently held that neither a State agency nor a State official in his official capacity is a "person" for purposes of a Section 1983 damages action. *Will v. Michigan Department of State Police*, 491 U.S. 58, 64 (1989). Therefore, since Congress did not waive a state's Eleventh Amendment immunity when it enacted Section 1983, any claims for damages under this section against the Defendants are barred.

### C. Plaintiff's Section 1983 Claims Against the Defendants in Their Individual Capacities

While neither a State nor a State official in his official capacity is a "person" for purposes of a Section 1983 damages action, a State official may be sued for damages in his or her individual capacity (as opposed to official capacity) under Section 1983 for an intentional deprivation of constitutional rights under color of state law. *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Goodmon v. Rockefeller*, 947 F.2d 1186 (4th Cir. 1991). In order to state a claim under Section 1983, the Plaintiff must show that the Defendants deprived the

Plaintiff of a right, privilege or immunity secured by the Constitution or Federal law and that in doing so the Defendants acted under color of state law. *Chiles v. Crooks*, 708 F. Supp. 127, 129 (D.S.C. 1989); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Inmates v. Owens*, 561 F.2d 560 (4th Cir. 1977).

It is well-settled that the Eighth Amendment to the United States Constitution is violated when prison officials expose an inmate to substantial risk of serious harm and demonstrate "deliberate indifference" to that risk. *Farmer v. Brennan*, 511 U.S. 825 (1994); *see also Rish v. Johnson*, 131 F.3d 1092 (4th Cir. 1997); *Price v. Sasser*, 65 F.3d 342 (4th Cir. 1995). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. The test is a subjective one. *Farmer v. Brennan*, 511 U.S. 825 (1994). Nevertheless, mere negligence does not violate the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976)

Deliberate indifference to an inmate's serious illness or injury is actionable under Section 1983 as constituting cruel and unusual punishment contravening the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Unless the Plaintiff's medical needs were serious or life threatening, and the Defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the Plaintiff may not prevail. *Estelle*, 429 U.S. at 104. To establish that a health care provider acted with deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.

A Section 1983 claim is not stated by disagreements between an inmate and a physician as to treatment or as to a diagnosis. *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986); *Webster v. Jones*, 554 F.2d 1285

(4th Cir. 1977). The Constitution requires that prisoners be provided with a certain minimum level of medical treatment, but it does not guarantee to a prisoner the treatment of his choice. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). A health care provider's method of diagnosis and choice of treatment of an inmate is not subject to judicial review. *Peterson v. Davis*, 551 F. Supp 137, 146 (D. Md. 1982), aff'd 729 F.2d 1453 (4th Cir. 1984). Deliberate indifference is a very high standard and a showing of mere negligence will not meet it. *Grayson v. Peed*, 195 F.3d 692, 696 (4th Cir. 1999) (*citing* Estelle, 429 U.S. at 105-06).

      The Defendants have provided the court with the Affidavit of Donald R. Sampson, M.D., and a copy of the Plaintiff's medical summary from February 10, 2005, to March 11, 2005. The medical summary indicates that Plaintiff was seen on an emergent basis by Nurse Peppers on February 12, 2005 for a bite on his leg and was prescribed Bactrim and ibuprofen. On February 14, Plaintiff was seen by Dr. Sampson; Plaintiff said he "thinks" a spider bit him, but denied actually seeing a spider on his leg.[15] Dr. Sampson prescribed Plaintiff another antibiotic and told him to return as needed. On February 15, Plaintiff was seen for a recheck of his "insect bite" by a Ms. Cade in medical, who wrote in Plaintiff's records: "no redness or drainage noted."[16] Plaintiff again was seen by medical on February 24, 2005, and complained that he had felt fatigued since being bitten by a spider on February 10.[17] Although the medical records indicate Plaintiff was seen for other concerns after February 24, there is no further mention of the spider bite or Plaintiff's fatigue until March 11, 2005, where it was noted that Plaintiff's fatigue had resolved.[18]

---

[15] *See* medical summary dated February 14, 2005 attached to Defendants' Motion at Tab 3.

[16] *See* medical summary dated February 15, 2005 attached to Defendants' Motion at Tab 3. The records indicate that Plaintiff was treated for the insect bite by Nurse Peppers and Nurse Cade. Nurse Connerly treated Plaintiff for other concerns.

[17] *See* medical summary dated February 24, 2005 attached to Defendants' Motion at Tab 3.

[18] *See* medical summary dated March 11, 2005 attached to Defendants' Motion at Tab 3.

The medical summary shows that the Defendants were not deliberately indifferent to the Plaintiff's health or safety regarding the spider bite. As Dr. Sampson has stated by Affidavit, there is no antidote for a suspected spider bite, and the standard of care requires treatment of the condition and symptoms. On this record, the Defendants promptly evaluated and properly treated the Plaintiff's spider bite and provided appropriate follow-up care to him. Plaintiff received a pain medication for his complaints of pain and antibiotics to treat any infection that may have been causing the redness, swelling and pus. Within days, the Plaintiff's left leg improved, and within a month, the Plaintiff no longer complained about the spider bite. At no time did the Plaintiff's condition become serious or life threatening, which would have required immediate or emergency care. Significantly, since March 11, 2005, the Plaintiff has not required any medical treatment for the spider bite to his left leg, and according to Dr. Sampson, he did not sustain any permanent injury.[19] The Court does not find that any genuine issue of material fact exists as to whether Defendants' treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). Accordingly, the Plaintiff fails to demonstrate that the Defendants were deliberately indifferent to his health or safety, and therefore, he fails to state a claim pursuant to the Eighth Amendment.

After careful review and consideration of the evidence and exhibits submitted to this Court, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case. Under the applicable case law, it is readily apparent that Plaintiff's claim is subject to dismissal because he has failed to show that any named Defendant was deliberately indifferent to a serious medical need that he had, or that any named Defendant acted with a sufficiently culpable state of mind to engage in conduct harmful to the Plaintiff.

---

[19]     *See* Sampson Affidavit, attached to Defendants' Motion.

*See generally, Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (in order to establish a constitutional claim, an inmate must show not only a sufficiently serious deprivation of a basic human need, but that the offending official engaged in the alleged adverse conduct with a sufficiently culpable state of mind).

Although the Defendants correctly invoke qualified immunity under *Harlow v. Fitzgerald,* 457 U.S. 800 (1982), this issue need not be reached given the disposition of the claim on the grounds discussed above.

### **RECOMMENDATION**

Based upon the foregoing, it is recommended that the Defendant's Motion for Summary Judgment **[7] be granted**.

GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

January 17, 2007

Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).